# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, § § *Plaintiff*, § § v. § § TRACI LEWIS, JEFFERY SMITH, § RANDOLPH BROOKS FEDERAL § CREDIT UNION, PLAINSCAPITAL § BANK, FIA CARD SERVICES, § § *Defendants*. § § | Civil Action No. SA-16-CV-344-XR |

## ORDER

On this date, the Court considered the status of the above captioned-case. After careful consideration, the Court GRANTS Plaintiff U.S. Bank National Association's Motion for Summary Judgment. Docket no. 49.

## BACKGROUND

### I. Factual Background

On April 6, 2016, Plaintiff filed its Original Complaint in this case against Defendants, seeking foreclosure of certain real property in Bexar County, Texas. Docket no. 1. Plaintiff brings a claim for breach of contract, alleging that Defendants Traci Lewis and Jeffery Smith defaulted on a loan that was secured by a lien on the property at issue. *Id.* at 4–6.

On February 20, 2006, Lewis executed and delivered a Texas Home Equity Fixed Rate Note (the "Note") to BSM Financial, L.P. d/b/a Gold Financial, whereby Lewis promised to pay Lender $596,000 plus interest in exchange for an extension of credit. *Id.* at 4. BSM Financial

1

indorsed the Note, which was later assigned to Plaintiff. *Id.* On February 20, 2006, Lewis, with her then-husband Smith signing pro forma only to perfect the lien, executed a Texas Home Equity Security Instrument (the "Security Instrument") to secure the Note with a lien on the real property at 6 Turin Court, San Antonio, Texas 78257 (the "Property"). *Id.* Thereafter, the Security Instrument was assigned to Plaintiff. *Id.* at 4–5. Plaintiff is the record assignee of the Security Instrument. *Id.* at 5.

Plaintiff alleges that Lewis failed to timely make payments on the Note, even after Plaintiff made repeated demands for payment. *Id.* On April 18, 2010, Plaintiff served, through its prior mortgage servicer America's Servicing Company ("ASC"), a Notice of Default and Intent to Accelerate on Lewis. Docket no. 49-6. The notice stated that Lewis was in default on the Note, could cure the default by paying the amount owed within thirty days, and that failure to cure would result in acceleration. *Id.*

Lewis alleges that on September 24, 2010, Plaintiff sent her a notice of acceleration. Docket no. 67 at 5. Lewis alleges the notice also stated that because she had entered a loss mitigation process for the loan, which she had been working toward since 2009, she was waiving her right to receive future foreclosure notices. *Id.* Lewis states she was approved for a loan modification on February 28, 2011, but then she was told three months after accepting the modification that ASC made a mistake and could not offer the modification. *Id.* at 6.

On November 7, 2011, Plaintiff sent a second Notice of Default and Intent to Accelerate letter to Lewis. Docket no. 49-7. This letter also stated that Lewis was in default, could cure the default by paying the amount owed within thirty days, and that failure to cure would result in acceleration. *Id.* The notice stated that the amount required "to cure the default is $103,853.04."

2

*Id.* Plaintiff contends that this November 7, 2011, letter effectively decelerates any prior acceleration of the loan, including the notice of acceleration that Lewis alleges was sent on September 24, 2010. Docket no. 49 at 5–6.

Plaintiff alleges that Lewis failed to cure the default, and its records indicate that the full unpaid principal balance on the Note is $557,122.17 and the negative escrow balance is $159,267.12. *Id.* at 6; *see* Docket no. 49-9 at 3. Plaintiff brings a breach of contract claim against Defendants Lewis and Smith. Docket no. 1 at 4–6. Plaintiff also named Randolph Brooks Federal Credit Union, PlainsCapital Bank, County of Bexar, City of San Antonio, Harlandale Independent School District, and FIA Card Services as Defendants, alleging that they claim an interest in the real property at issue in this case. Docket no. 1 at 1–3.[1]

## II. Procedural History

On August 18, 2017, Lewis filed her Second Amended Answer and Counterclaims against Plaintiff. Docket no. 42. On April 5, 2018, Lewis filed a Third Amended Answer and Counterclaims against Plaintiff, in which she asserted claims for breach of contract, violations of the Texas Debt Collection Practices Act ("TDCA"), and declaratory judgment against Plaintiff. Docket no. 61. Lewis bases her claims on the argument that the four-year statute of limitations has run, and Plaintiff can no longer foreclose on the property. *Id.*

On March 5, 2018, Plaintiff filed its motion for summary judgment against only Defendant Lewis. Plaintiff argues it is entitled to judgment as a matter of law on its breach of contract claim against Lewis and that the statute of limitations did not expire for it to seek

---

[1] Randolph Brooks Federal Credit Union filed its Answer on April 27, 2016. Docket no. 12. Bexar County, the City of San Antonio, and Harlandale Independent School District were dismissed from the case by Plaintiff on September 23, 2016. Plaintiff moved for entry of default against Jeffery Smith, PlainsCapital Bank, and FIA Card Services, and the clerk entered default on May 15, 2017. Docket nos. 36-38.

foreclosure. Docket no. 49. Plaintiff also argues that Lewis's counterclaims fail as a matter of law. *Id.*

## ANALYSIS

**I.   Legal Standard**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

**II. Application**

Plaintiff argues it is entitled to summary judgment on its breach of contract claim because Lewis breached the terms of the Note and Security Instrument. Plaintiff also argues it is entitled to summary judgment on Lewis's counterclaims because they fail as a matter of law and they are barred by judicial estoppel.

**A. Plaintiff's Breach of Contract Claim**

To prevail on a breach of contract claim, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (citing *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015)).

First, the evidence shows that the Note and Security Instrument are valid, enforceable contracts between Plaintiff and Lewis. *See* Docket nos. 49-1, 49-2; *see also* Docket nos. 49-4, 49-5 (assigning Note and Security Instrument to Plaintiff). The evidence shows that the Note exists, that Lewis executed the Note, that Plaintiff is now the holder of the Note, and there is a balance due and owing on the Note. *See Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (setting out elements that a lender must establish to recover on a debt due under a promissory note). Plaintiff's predecessor-in-interest tendered performance by extending credit to Plaintiff.

Plaintiff argues that Lewis breached the contract by failing to timely tender monthly mortgage payments, and that at the time of Plaintiff filing its motion, the unpaid principal balance on the Note is $557,122.17, and the negative escrow balance is $159,267.12. Docket no.

49 at 8. Lewis argues that there is at least a question of fact as to whether Plaintiff can seek foreclosure for an alleged breach of contract because the statute of limitations has run. Docket no. 67 at 1. Lewis admits that she intentionally fell behind on her mortgage payments, stating she did so that she could be considered for a loan modification. Docket no. 67 at 5. Lewis, however, argues the statute of limitations has run since she received the first notice of default and acceleration on her loan, and thus, Plaintiff should not prevail as a matter of law on its breach of contract claim.

Under Texas law, "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(a). Further, "[a] sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." *Id.* § 16.035(b). Upon the expiration of that four-year period, "the real property lien and a power of sale to enforce the real property lien become void." *Id.* § 16.035(d). "If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). For acceleration to be effective, there must be: "(1) notice of intent to accelerate, and (2) notice of acceleration." *Id.* If a noteholder does accelerate a note upon default, "the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Id.* at 566–67; *see San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (1901) (explaining that parties'

6

agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken"); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ) (explaining that an option to accelerate can be withdrawn or revoked after it is exercised, effectively restoring the note's original maturity date).

Through its predecessor, Plaintiff sent Lewis a Notice of Default and Intent to Accelerate on April 18, 2010, and sent a Notice of Acceleration on September 24, 2010. Docket no. 67-3 at 4–6. With only these facts, it would appear that the statute of limitations for Plaintiff to bring suit to foreclose may have run on September 24, 2014, well before Plaintiff filed its complaint on April 6, 2016. Plaintiff, however, argues that it sent another Notice of Default and Intent to Accelerate letter on November 7, 2011, to Lewis, which effectively revoked any prior acceleration. *See* Docket no. 49-7. Plaintiff argues that the November 7, 2011, letter restored the contract to its original maturity date and, thus, the statute of limitations has not run for it to bring suit to foreclose.

If a noteholder abandons acceleration before the limitation period runs, such an act "restores the contract to its original condition, including the note's original maturity date." *Cline v. Deutsche Bank Nat. Tr. Co.*, No. 3:14-CV-1565-D, 2015 WL 4041791, at *5 (N.D. Tex. July 2, 2015) (citing *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). If the noteholder in fact abandons acceleration, it no longer must foreclose within four years from the initial date of acceleration. *Id.*

Courts may look to the parties' agreement or actions to determine if acceleration was abandoned. *Khan*, 371 S.W.3d at 356. In *Leonard v. Ocwen Loan Servicing, L.L.C.*, the Fifth Circuit noted that a lender can unilaterally abandon acceleration and affirmed the lower court's

7

holding that the lender put the debtors "on notice of its abandonment of acceleration by requesting payment on less than the full amount of the loan." *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 680 (5th Cir. 2015). In that case, the requested payments were made by sending account statements that indicated the debtors' overdue balance consisted of missed payment amounts, rather than the entire balance of the loan. *Id.* at 679.

Similarly, in this case, Plaintiff sent Lewis a Notice of Default and Intent to Accelerate letter on November 7, 2011, which states that "[t]he loan is in default for failure to make the regular monthly payments required by the Note and Deed of Trust," and "[t]he action required to cure the default is the payment of all sums due under the Note and Deed of Trust." Docket no. 49-7 at 1. The letter indicates that the amount required to cure the default at that time was $103,853.04, *Id.*, which was less than the unpaid principal balance on the Note of $557,122.17. Docket no. 49-9 at 3.

Lewis argues that this single November 7, 2011, letter is insufficient to show abandonment of acceleration as a matter of law. Lewis argues that the representations Plaintiff made from 2009 to 2013 to her and Plaintiff's internal notes about loan modification and loss mitigation contradict the November 7, 2011, letter. But as Plaintiff argues, the internal notes indicate that Plaintiff was working to approve a loan modification for Lewis. This shows that Plaintiff was working toward accepting a payment option that was not the fully accelerated amount owed on the Note. Lewis even attached to her Response a monthly statement notice, which indicated outstanding payment amounts that were less than the full amount of the Note. Docket no. 67-3 at 7–8. Further, none of the letters or notes to which Lewis points contradict that the November 7, 2011, letter clearly indicates that Lewis was in default because she failed to

8

make regular payments. Importantly, the letter clearly states Lewis could cure that default by paying an amount that was not the full amount of the accelerated loan.

Abandonment can be "inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations." *Callan v. Deutsche Bank Tr. Co. Americas*, 93 F. Supp. 3d 725, 728 (S.D. Tex. 2015) (citing *San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 389 (1901)). Here, Plaintiff has provided ample evidence that it unilaterally abandoned acceleration of the loan by sending monthly statements that demanded less than full payment of the loan and sending the November 7, 2011, Notice of Default and Intent to Accelerate letter. There is no genuine dispute of material fact that Plaintiff abandoned acceleration of the loan within the four-year statute of limitations, and thus, Plaintiff's breach of contract claim is not time-barred.

As discussed above, Lewis admitted that she fell behind on her mortgage payments. There is no genuine dispute of fact that Lewis breached her obligations under the Note and Deed of Trust by failing to timely make her monthly mortgage payments. Further, there is no factual dispute that Plaintiff incurred damages from Lewis's breach because of the unpaid loan balance. Thus, Plaintiff is entitled to summary judgment on its breach of contract claim against Lewis.

**B. Lewis's Counterclaims for Breach of Contract and Violations of the TDCA**

Plaintiff seeks summary judgment on Lewis's counterclaims for breach of contract and violations of the TDCA. Plaintiff further argues that Lewis is not entitled to her requested declaratory judgment.

First, Lewis's breach of contract counterclaim fails as a matter of law. Lewis alleges that Plaintiff breached the contract because the statute of limitations has run to bring suit for

9

foreclosure, thereby making the Note and Security Instrument void. Docket no. 61 at 5–6. To prevail on a claim for breach of contract, Lewis must show (1) the existence of a valid contract; (2) performance or tendered performance by Lewis; (3) breach of the contract by Plaintiff; and (4) damages to Lewis resulting from that breach. *Wells*, 885 F.3d at 889. However, a mortgagor who defaults on a mortgage cannot maintain an action for breach of contract. *See Kaechler v. Bank of Am., N.A.*, No. CIV.A. H-12-423, 2013 WL 127555, at *3 (S.D. Tex. Jan. 9, 2013) (quoting *RE/MAX of Texas, Inc. v. Katar Corp.*, 989 S.W.2d 363, 365 n.4 (Tex. 1999)) ("[A] party to a contract who is himself in default cannot maintain a suit for its breach."); *see also Moe v. Option One Mortg. Corp.*, 14-07-00550-CV, 2009 WL 136892, at *3 (Tex. App.—Houston [14th Dist.] Jan. 20, 2009, no pet.). Here, the evidence shows and Lewis acknowledges that she missed mortgage payments and did not cure the default; thus, she failed to perform her obligations under the Note and Deed of Trust. Lewis is precluded from bringing a breach of contract counterclaim against Plaintiff. *See Hill v. Wells Fargo Bank, N.A.*, No. CIV.A. V-12-11, 2012 WL 2065377, at *5 (S.D. Tex. June 6, 2012) (finding debtor could not bring breach of contract claim against lender for an alleged failure to comply with HUD regulations prior to accelerating the Note because plaintiff admitted "she failed to perform her own obligations under the Note and Deed of Trust"). Lewis's breach of contract counterclaim fails as a matter of law.

Second, Lewis's counterclaims for violations of the TDCA fail as a matter of law. Lewis alleges that Plaintiff violated Texas Finance Code § 392.301 by threatening to take action prohibited by law because it seeks to "foreclose upon the Property under a lien made void by virtue of the four-year statute of limitations." Docket no. 61 at 7. A debt collector "may not use threats, coercion, or attempts to coerce that employ" certain practices, including "threatening to

take an action prohibited by law." TEX. FIN. CODE § 392.301(8). But the action that Lewis complains of—attempted foreclosure—is not an action prohibited by law. *See Cole v. U.S. Bank Nat. Ass'n ND*, No. CIV.A. H-11-2325, 2011 WL 3651029, at *1 (S.D. Tex. Aug. 17, 2011) ("Threats of foreclosure are, however, expressly permitted under the TDCPA."); *see also* TEX. FIN. CODE § 392.301(b) ("Subsection (a) does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings."). Here, the Deed of Trust authorizes Plaintiff to foreclose on the Property, and the threatened foreclosure was not an action prohibited by law. Thus, Lewis's counterclaim for violation of § 392.301 fails as a matter of law.

Lewis also alleges that Plaintiff violated Texas Finance Code § 392.304(a)(8) by "misrepresenting the character, extent, or amount of a consumer debt or consumer's debt's status." Docket no. 61 at 7. A debt collector may not "use a fraudulent, deceptive, or misleading representation that employs" certain practices, including "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8). For a statement to constitute a misrepresentation, Lewis must show that Plaintiff made an affirmative statement that was false or misleading. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010) (citing *Reynolds v. Sw. Bell Tel., L.P.*, 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.—Fort Worth June 29, 2006, pet. denied)); *see also Bellaish v. Chase Home Fin., LLC*, No. CIV.A. H-10-2791, 2011 WL 4902958, at *2 (S.D. Tex. Oct. 14, 2011). Lewis does not allege, for example, that Plaintiff sent a balance statement that misstated the amount owed on the debt, nor does she identify any other affirmative statement Plaintiff made that was allegedly false or

misleading. Lewis bases her counterclaim on the allegation that Plaintiff attempted to seek foreclosure after the statute of limitations had run. Such a claim, however, does not rise to the level of an affirmative statement that is false or misleading. Thus, Lewis's counterclaim for a violation of § 392.304(a)(8) fails as a matter of law. The Court need not address Plaintiff's arguments on judicial estoppel.

Finally, Lewis is not entitled to declaratory judgment. Lewis seeks a declaration "that the subject loan was accelerated on September 24, 2010, the four years have passed, and thus the Security Instrument is now void" under the Declaratory Judgment Act. Docket no. 61 at 6. The Declaratory Judgment Act is a procedural device that creates no substantive rights, and it requires the existence of a justiciable controversy. *Phillips v. Beauly, LLC*, No. 4:16-CV-02272, 2017 WL 3387187, at *2 (S.D. Tex. Aug. 7, 2017) (citing *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173 (5th Cir. 1984)). There must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). If there is no viable, underlying claim for a court to adjudicate, then a party is not entitled to declaratory relief. *See Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011). Lewis's counterclaims all fail as a matter of law. Thus, Lewis is not entitled to a declaratory judgment.

### C. Plaintiff's Request for Foreclosure, Attorney's Fees, and Costs

Plaintiff asks the Court to quantify the amount chargeable to the Property with respect to the loan and grant foreclosure upon the lien to secure such amount. However, the Court notes that Plaintiff still has claims against Defendant Randolph Brooks Federal Credit Union, who

filed an answer in this case, and Defendants Jeffery Smith, PlainsCapital Bank, and FIA Card Services, against whom the clerk entered default but against whom Plaintiff has not moved for default judgment. Thus, final judgment is not yet appropriate. Plaintiff is therefore **ORDERED** to indicate to the Court how it intends to proceed in this case with regard to the remaining Defendants on or before **July 31, 2018**. Plaintiff also seeks attorney's fees and costs incurred in this litigation. The Court will consider any such awards upon the entry of final judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment. Docket no. 49. Plaintiff is **ORDERED** to indicate to the Court how it intends to proceed in this case with regard to the remaining Defendants on or before **July 31, 2018**.

It is so ORDERED.

SIGNED this 17th day of July, 2018.

```
_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE
```